IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **FREIGHTQUOTE.COM,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **BAH EXPRESS, INC., et. al,** ) <br> ) <br> **Defendants.** ) <br> ) | CIVIL ACTION <br><br> Case No. 08-2212-CM |

## MEMORANDUM AND ORDER

Plaintiff Freightquote.com, Inc. ("Freightquote") brings this case against defendants BAH Express, Inc. ("BAH") and Lisa Walker, alleging breach of a covenant not to solicit, breach of contract, and tortious interference. This case is pending before the court on defendant BAH Express, Inc.'s Motion to Dismiss the Plaintiff's Petition for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2) (Doc. 2). Because plaintiff's allegations support personal jurisdiction, the court denies defendant BAH's motion.

**I.      Factual Background**

Plaintiff, a broker of shipping services, is a Delaware corporation with its principle place of business in Kansas. It is the parent company of Rockwell Transportation Services ("Rockwell"), which operates shipping services in Georgia. Defendant BAH is a Georgia corporation with its principle place of business in Georgia. Defendant Lisa Walker is a resident of Georgia. Until March 4, 2008, she worked for Rockwell.

Plaintiff requires its employees to execute non-solicitation/non-competition agreements. Employees agree not to work for a competitor for one year after termination of their employment and not to solicit the business of plaintiff's clients for two years. The agreements state that all

disputes are governed by the laws of Kansas and that employees expressly submit to the exclusive personal jurisdiction and venue of Kansas state and federal courts. Defendant Walker entered into such an agreement with plaintiff.

Defendant Walker resigned from her employment with plaintiff on March 4, 2008. She began working for defendant BAH, a direct business competitor of plaintiff. Plaintiff brings this action against defendant Walker for breach of the non-solicitation agreement and against defendant BAH for tortious interference with the agreement.

**II.     Personal Jurisdiction**

A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992). To demonstrate personal jurisdiction sufficient to defeat a motion to dismiss, a plaintiff need only make a prima facie showing that jurisdiction exists. *Ten Mile Indus. Park v. W. Plains Serv. Co.*, 810 F.2d 1518, 1524 (10th Cir. 1987). "In ascertaining the facts necessary to establish jurisdiction, the district court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by the defendant's affidavits." *Id.* However, the plaintiff has the "duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res. Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The complaint and any affidavits submitted are to be construed, and any doubts are to be resolved, in the light most favorable to the plaintiff. *Fed. Deposit*, 959 F.2d at 174. Each of defendant's contacts with the forum state must be assessed individually. *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n.13 (1984); *Traffas v. Bridge Capital Corp.*, No. 90-1304-C, 1990 WL 251740, at *7 (D. Kan. Dec. 3, 1990).

In analyzing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the court must determine whether the defendant's conduct falls within one of the provisions of the Kansas long-arm statute, Kan. Stat. Ann. § 60-308, and whether the exercise of jurisdiction would offend the constitutional guarantee of due process. *See Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir. 1990). However, "these inquiries are for all intents and purposes the same because the Kansas long-arm statute . . . has been liberally construed by the Kansas courts to assert personal jurisdiction to the full extent permitted by the due process clause." *Flannagan v. Bader*, 905 F. Supp. 933, 936 (D. Kan. 1995). Therefore, the court proceeds directly to the constitutional inquiry. *See OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1090 (10th Cir. 1998) (citation omitted); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994).

"The [Constitutional] 'minimum contacts' standard may be met in one of two ways." *OMI Holdings*, 149 F.3d at 1090. First, a court may exercise specific jurisdiction over a nonresident defendant where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or are related to those activities." *Id.* at 1090–91 (quoting *Burger King*, 471 U.S. at 472; *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987)). Where no nexus is alleged to exist between the defendant's forum-related activities and the injury sustained, a court may nevertheless exercise "general" jurisdiction over a nonresident defendant whose contacts with the forum state are so pervasive that personal jurisdiction is conferred by the "continuous and systematic" nature of the defendant's in-state activities. *Id.* Plaintiff alleges that the court has both specific and general jurisdiction over defendant BAH.

**a.    Specific Jurisdiction**

Consistent with due process, specific jurisdiction may be conferred over a nonresident

defendant where the court's exercise of jurisdiction directly arises from the defendant's forum-related activities. To determine whether specific jurisdiction is appropriate, the court must first decide whether the defendant has such minimum contacts within the forum state "that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Second, the court must then consider whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Asahi Metal*, 480 U.S. at 113. This inquiry requires a determination of whether the district court's exercise of personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1279 (10th Cir. 2005).

### *1. Minimum Contacts*

The minimum contacts standard requires (1) that the out-of-state defendant "purposefully directed" its activities at residents of the forum state, and (2) that the plaintiff's injuries "arise out of" defendant's forum-related activities. *Burger King*, 471 U.S. at 472; *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008). The shared aim of the "purposeful direction" doctrine is to ensure that an out-of-state defendant is not bound to appear to account for merely "random, fortuitous, or attenuated contacts" with the forum state. *Burger King*, 471 U.S. at 475; *Dudnikov*, 514 F.3d at 1071.

Purposeful direction to a forum exists if a party engages in (1) an intentional action that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state. *See Dudnikov*, 514 F.3d at 1072 (citing *Calder v. Jones*, 465 U.S. 783 (1984)). The mere foreseeability of causing injury in the forum state is, standing alone, insufficient to warrant a state exercising its sovereignty over an out-of-state defendant. *Id.* at 1077. "[A]ctions that are performed for the very purpose of having their consequences felt in the forum state are more than

-4-

sufficient to support a finding of purposeful direction under *Calder*." *Id.* at 1078 (citation and internal quotation marks omitted).

Plaintiff argues that defendant BAH satisfies the minimum contacts requirement because it intentionally aimed tortious conduct at plaintiff—a Kansas resident—resulting in injury within the state of Kansas. Specifically, plaintiff argues that after it entered into a non-solicitation agreement with defendant Walker, defendant BAH induced defendant Walker to breach her agreement with plaintiff. Plaintiff further contends that defendant BAH targeted the business accounts that defendant Walker previously serviced while employed by plaintiff, breaching defendant BAH's Motor Carrier Agreement with plaintiff's subsidiary. In that agreement, defendant BAH agreed it would not solicit Rockwell's (now plaintiff's) customers. Plaintiff argues that defendant BAH knew that plaintiff had purchased Rockwell as early as January 2007, when Rockwell's vendors were notified that plaintiff had purchased Rockwell's assets. Moreover, plaintiff argues that it provided defendant BAH with a new Kansas billing address for Rockwell. And plaintiff points out that defendant Walker testified in deposition that before she was hired by defendant BAH, she and defendant BAH discussed the non-solicitation agreement, defendant BAH evaluated the agreement, and defendant BAH determined that it would not hold up in the State of Georgia.

In response, defendant BAH points out what is absent from the record—any indication that defendant BAH recruited or encouraged defendant Walker to resign. But the court determines that defendant BAH ignores the reasonable inference from its actions: By examining the agreement and informing defendant Walker it would carry no weight in Georgia, defendant BAH implicitly suggested and encouraged defendant Walker to continue to seek employment with defendant BAH.

Defendant BAH also argues that its knowledge of the Kansas choice of law and forum provisions is irrelevant because the Superior Court of Gwinnett County, Georgia entered an order on

-5-

July 25, 2008 ordering that Georgia law—not Kansas law—applies to the enforceability of the non-solicitation agreement. This argument does not carry much weight. First, the alleged tortious interference occurred in February 2008, five months before the determination by the Georgia state court that the Kansas choice of law and forum provisions were invalid. Therefore, the court finds that defendant BAH could not have relied on the inapplicability of the non-solicitation agreement when it hired defendant Walker. The court finds defendant BAH's knowledge of the Kansas choice of law and forum provisions relevant to its intent.

After considering the facts in the complaint and supporting affidavits in the light most favorable to plaintiff, the court determines that plaintiff has established a prima facie case that defendant BAH purposefully directed its activity at Kansas.

### *2.     Traditional notions of fair play and substantial justice*

The court next turns to whether asserting personal jurisdiction over defendant BAH would offend "traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). This turns on whether it is reasonable for the court to exercise personal jurisdiction. *OMI Holdings*, 149 F.3d at 1091. An "interplay exists between the two components [of the specific jurisdiction inquiry], such that, 'depending on the strength of the defendant's contacts with the forum state, the reasonableness component of the constitutional test may have a greater or lesser effect on the outcome of the due process inquiry.'" *Id.* at 1091–92 (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)); *see Pro Axess*, 428 F.3d at 1280 ("[T]he analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction."). The court considers "(1) the burden on the defendant, (2) the forum state's

interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *OMI Holdings*, 149 F.3d at 1095 (citing *Asahi Metal*, 480 U.S. at 113). If these factors are strong, they may establish jurisdiction even though the minimum contacts are minor. *Id.*

With respect to the first factor, defendant BAH is based in Georgia, all of its employees and potential witnesses are based in Georgia, and defending a suit in Kansas would undoubtedly burden it. However, "[d]efending a suit in a foreign jurisdiction is not as burdensome as in the past." *Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982) (citing *Hanson v. Denckla*, 357 U.S. 235, 250–51 (1958)). This factor is neutral.

With respect to the second factor, Kansas has a strong interest in adjudicating this controversy because the alleged injury was suffered by a Kansas resident in the state of Kansas. *See Burger King*, 471 U.S. at 483–84. This factor weighs in favor of plaintiff.

With respect to the third factor, plaintiff's interest in receiving convenient and effective relief weighs in favor of exercising personal jurisdiction in Kansas. Pursuing this claim in another forum would be burdensome on plaintiff because plaintiff and its employees are based in Kansas. *See OMI Holdings*, 149 F.3d at 1097. This factor weighs in favor of plaintiff.

With respect to the fourth factor, the court evaluates whether Kansas would best further the interstate judicial system's interest in obtaining efficient resolution of controversies. *Id.* In evaluating this factor, courts look at the location of witnesses, the location of the underlying wrong, what forum's law applies and "whether jurisdiction is necessary to prevent piecemeal litigation." *Id.* The first consideration favors defendant BAH because virtually all of the witnesses are located in Georgia. The second consideration also favors defendant BAH because the alleged wrong occurred

in Georgia. The third consideration favors plaintiff because the alleged injury occurred in Kansas, suggesting that Kansas law will apply. *Dow Chem. Corp. v. Weevil-Cide Co.*, 630 F. Supp. 125, 127 (D. Kan. 1986) (stating that "[i]n a diversity action . . . a federal court must apply the choice of law rules of the forum state."); *Kan. Mun. Gas Agency v. Vesta Energy Co.*, 840 F. Supp. 814, 822–23 (D. Kan. 1993) (stating that, in a tort case, the law of the state where the injury occurred should be applied). The final consideration does not strongly favor either party. Overall, the court finds that the interstate judicial system's interest may be best served by litigating the dispute in either Kansas or Georgia, rendering the factor neutral.

With respect to the fifth factor, the court focuses on whether exercising jurisdiction in Kansas would affect "the substantive social policy interests of other states or foreign nations." *OMI Holdings*, 149 F.3d at 1097. Here, exercising jurisdiction could affect social policy in Georgia, a state which disfavors choice of law provisions. Under Georgia law, "[a] choice of law provision set forth in an agreement containing a restrictive covenant will not allow the parties to choose a jurisdiction that will uphold what is against Georgia public policy; Georgia courts will decide the validity of such restrictive covenant in partial restraint of trade under Georgia law, including Georgia rules as to choice of law." *Hostetler v. Answerthink, Inc.*, 599 S.E.2d 271, 274–75 (Ga. Ct. App. 2004). "Covenants against disclosure, like covenants against competition, affect the interests of this state, namely the flow of information needed for competition among businesses, and hence their validity is determined by the public policy of this state." *Id*.

The agreement was executed in Georgia between a resident of Georgia, whose work was completely performed in Georgia, and a subsidiary company based in Georgia that was authorized to do business in Georgia, but whose parent company was based in Kansas. Because of the substantial ties to Georgia, the exercise of jurisdiction in Kansas could affect the substantive social policy

interests of Georgia. But on the other hand, plaintiff does not assert that this court has personal jurisdiction over defendant BAH based on the contract itself—plaintiff asserts that personal jurisdiction exists based on defendant BAH's tortious conduct. This factor weighs slightly in favor of defendant BAH.

After evaluating the relevant factors, the court finds that exercising personal jurisdiction over defendant BAH would not offend traditional notions of fair play and substantial justice. Exercising specific jurisdiction in Kansas over defendant BAH is reasonable given the extent of defendant BAH's contacts with Kansas compared to the relative weights of the reasonableness factors. Although the contacts are not extensive, any reasonableness factors weighing in favor of defendant BAH are not strong enough to overcome defendant BAH's contacts with Kansas. Plaintiff has established a prima facie case of personal jurisdiction over defendant BAH.

**b.    General Jurisdiction**

Because the court determines that it has specific jurisdiction over defendant BAH, it need not reach the question of whether general jurisdiction exists.

**IT IS THEREFORE ORDERED** that BAH Express, Inc's Motion to Dismiss the Plaintiff's Petition for Lack of Personal Jurisdiction Under Federal Rule of Civil Procedure 12(b)(2) (Doc. 2) is denied.

Dated this 17th day of November 2008, at Kansas City, Kansas.

        **s/ Carlos Murguia**
        **CARLOS MURGUIA**
        **United States District Judge**